## NELSON v. BOLDT et al.

(Circuit Court, E. D. Pennsylvania. July 21, 1910.)

### No. 662.

1. WITNESSES (§ 268*)—CROSS-EXAMINATION—SCOPE.

Where, in an action for damages against the proprietors of a hotel for refusing to furnish plaintiff accommodations, plaintiff testified in chief that he was in the business of athletics and looking after his real estate, he was properly questioned on cross-examination as to whether his business was not that of a prize fighter, and whether in his prize fighting career he had not violated the laws of various states relating to such subject.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 268.*]

2. INNKEEPERS (§ 9*)—DUTY TO RECEIVE GUESTS—REFUSAL OF ACCOMMODATIONS.

While an innkeeper owes a duty to travelers applying for accommodations and tendering reasonable payment therefor to receive and accommodate them, he may lawfully refuse to receive boisterous, intoxicated, or objectionable characters and persons who are violators of the criminal laws,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and are not law-abiding citizens, such as prize fighters, etc., without being liable to such persons for damages.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. § 10; Dec. Dig. § 9.*]

At Law. Action by Oscar Battling Matthew Nelson against George C. Boldt and another. On plaintiff's motion for a new trial. Denied.

The court charged the jury, in part, as follows:

"Innkeepers owe a certain duty to the traveling public which they are required at all times to perform, and, if they violate the duty or refuse to perform it, they are answerable in damages to any person who suffers injury as a result therefrom."

"When a traveler presents himself at an inn, it is the duty of the innkeeper to accommodate him if he be a fit person to be admitted and receive accommodation; it being the innkeeper's duty to receive into his house all strangers and travelers who may call for entertainment, provided he has rooms, and they tender him a reasonable sum for the accommodation demanded. The innkeeper, however, can refuse to admit any one, if he pleases, rendering himself liable in an action for any injury the stranger may sustain. If he refuses to entertain a stranger or a traveler for a good reason, he is not liable for damages, as the law only requires him to entertain fit persons."

"It is also the duty of an innkeeper to protect his guests against the intrusion of boisterous, objectionable characters and persons intoxicated, and such persons may be rejected. Where objection to admitting a guest is based on the fact that the guest is committing a breach of the peace, or is intoxicated, the innkeeper's justification may be determined by the court as a matter of law, but when the question is as to the guest's character or reputation, and his standing as a reputable person, the question is for the jury; that if the jury believed that plaintiff was not a law-abiding citizen, but at the time was engaged in a business which was in violation of the laws of the various states of the United States, then the jury would be authorized in finding that he was not such a proper person as was entitled to enforce a legal right to be admitted to a hotel in the state of Pennsylvania, and defendants would be justified in refusing to give him such accommodations as he demanded at that time, it being no answer that other hotels would accommodate him."

The evidence reviewed by the court to the jury indicated that plaintiff, while claiming to be engaged in athletics and looking after real estate, had in fact represented himself in his own biography as the champion light-weight prize fighter of the world up to February 22, 1910. It also appeared that he had engaged in nearly a hundred hotly-contested battles which were such as to be prohibited by the laws of the state of Pennsylvania and of other states, by which such contests are made a criminal offense. The court thereupon charged that it was for the jury to say whether a violator of the criminal laws of the various states, such as the evidence showed plaintiff was, would be a reputable person to be admitted to a hotel in Pennsylvania under the law as previously stated, and that, if the jury conclude that he was not, he could not recover.

E. Waring Wilson, for plaintiff.
Henry S. Drinker, Jr., and Abraham M. Beitler, for defendants.

HOLLAND, District Judge. This was a suit instituted by the plaintiff against the defendants, owners and managers of the Bellevue-Stratford Hotel in Philadelphia, to recover damages for having been refused lodging and accommodation at the hotel. On August 2, 1909, the plaintiff secured a room at the Bellevue-Stratford through his agent, Mr. Robinson, which he occupied until the morning of August 3d. While Mr. Nelson and his agent, Mr. Robinson, were at breakfast, his satchels were removed from his room to the baggage room,

and, when he applied for a room for the following night, the clerk refused to assign him one. He left the hotel and secured a room at the St. James, Thirteenth and Walnut streets, about one square away. Next day he brought suit for damages against the Bellevue-Stratford, and the case was tried in this court on the 6th of April, 1910, and a verdict rendered in favor of the defendant. Motion and reasons for a new trial were filed in due time by the plaintiff, the reasons being five in number, which, however, raise only two questions. The first question to be considered is raised by the third ground for a new trial, which is as follows:

"The learned judge erred in not confining the cross-examination of plaintiff to such matters as had been stated in the examination in chief, and to such questions as might tend to show bias and interest, and in permitting defendant to lead out new matter constituting his own case under the guise of cross-examination."

The plaintiff had been examined by his counsel in his own behalf, and had testified as follows:

"Q. What is your business? A. Athletics is my business, and I have a lot of real estate in six different states to the extent of about $250,000, and I have to look after that.

"Q. Do you do newspaper work? A. Considerable; yes, sir. I have been corresponding for a dozen different papers for the last five years, doing special work."

Upon an objection by the defendant's counsel to the amount of real estate he owned, Mr. Wilson, counsel for plaintiff, insisted that he wanted to show Mr. Nelson's business. The witness further testified, in answer to questions submitted to him by his counsel, as follows:

"Q. Have you ever been convicted or accused of any crime or misdemeanors of any kind? A. No, sir.

"Q. Or disgraceful conduct? A. No, sir.

"Q. You have never been accused of any of those things? A. No, sir; never.

"Q. What are your personal habits with respect to drink, especially what was your condition at this time?

"By Mr. Beitler, Counsel for Defendants: That is a matter of defense, if this man was in bad condition. We do not intend to allege he was in bad condition. We do not intend to allege he was not sober.

"By Mr. Wilson, Counsel for Plaintiff: I thought the burden was upon me to show that he was a proper person.

"By Mr. Beitler: I do not intend to allege that he was not sober.

"Mr. Nelson, the Witness: I always travel in the best of company, and mix with the best people in the world."

This was part of the testimony of the plaintiff, offered in chief, for the purpose of sustaining his claim for damages against the defendant; they having refused to admit him to the hotel.

Upon cross-examination the defendant's counsel endeavored to show that Mr. Nelson was not in the business of athletics and looking after his real estate. He was questioned as to whether or not his business was not that of a prize fighter, instead of one engaged merely in athletics. He was further cross-examined on the question as to whether he had ever been convicted or accused of any crime or misdemeanor of any kind, and in the examination on this point he volunteered the assertion that he had never "knowingly violated any

law of any state of the Union, or had ever been arrested." He further stated, "I never violated the law in my life in any state." He was then further questioned as to whether or not it was unlawful to fight prize fights in certain states of the Union, and the law of the state was read to him, after which he was asked whether or not he knew of the existence of that law at the time he fought his prize fight, for the purpose of contradicting him and showing that he had knowingly violated the law of different states. The examination was very extensive because of the varied career of the plaintiff and because of the great number of fights in which he took part.

It seems to me that this was proper cross-examination in view of the position assumed by the plaintiff's counsel that it was his right to establish the plaintiff's fitness to be a guest at the hotel, and offered evidence as to his business and standing, and that he had been a law-abiding person. He was properly cross-examined upon his answers in chief in regard to these matters.

The only other questions raised by the assignments of error are to the charge of the court as to the right of all persons to be admitted to a hotel. We still think the view of the court taken at the trial and expressed in the charge to the jury is a correct exposition of the law.

The motion and reasons for a new trial are overruled.